RECEIVED

JAN 2 7 2006

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| STEVE M. MARCANTEL | CIVIL ACTION NO. 05-0043 |
| VERSUS | JUDGE DOHERTY |
| WARDEN, AVOYELLES BUNKIE DETENTION CENTER | MAGISTRATE JUDGE METHVIN |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed by *pro se* petitioner Steve M. Marcantel on January 10, 2005 pursuant to 28 U.S.C. §2254.[1] For the following reasons, **IT IS RECOMMENDED** that the petition be **DENIED AND DISMISSED WITH PREJUDICE.**

### *Factual and Procedural Background*

On August 18, 1998, Marcantel was convicted of one count of felony theft and seven counts of possession of a firearm by a convicted felon following a jury trial in the Thirteenth Judicial District Court.[2] On December 29, 1998, Marcantel was sentenced to ten years on the theft conviction and fifteen years on each count of the firearms charges. The firearms sentences were ordered to be served concurrently with each other, but consecutive to the theft sentence, for a total of twenty-five years' imprisonment at hard labor.

Marcantel timely appealed his conviction to the Third Circuit Court of Appeals. On March 1, 2000, the Third Circuit affirmed the theft conviction and five of the seven firearm

---

[1] Rec. Doc. 1. For a complete procedural history of this case, including citations to all documents contained in the state court record, see Memorandum Order dated April 21, 2005, Rec. Doc. 5.

[2] Marcantel was not convicted on other counts. The original bill of information charged him with two counts of simple burglary of a building and two counts of theft. On April 3, 1998, the bill of information was amended to add a third count of theft, a count of possession of stolen property, and seven counts of possession of a firearm by a convicted felon.

convictions. However, the court vacated the sentences as to the five firearm counts. On remand, the trial court was instructed to hold an evidentiary hearing to complete the record as to the two remaining firearm counts, and to re-sentence Marcantel in accordance with La. C.Cr.P. art. 873, which mandates a delay of at least twenty-four hours between the denial of a motion for a new trial and the imposition of sentence. State v. Marcantel, 771 So.2d 326 (La. App. 3rd Cir. 3/1/2000) (unpublished).

Although there are no minutes of the re-sentencing in the record, apparently the trial court did this promptly, because on May 31, 2000, Marcantel submitted a *pro se* application for writ of *certiorari* to the Louisiana Supreme Court, seeking review of his convictions and sentences on the theft count, and the seven firearms counts. On June 29, 2001, the Louisiana Supreme Court granted writs. State v. Marcantel, 794 So.2d 828 (La. 6/29/2000). On April 3, 2002, the Louisiana Supreme Court affirmed Marcantel's convictions on all eight counts. Marcantel's subsequent application for rehearing was denied on May 24, 2002. State v. Marcantel, 815 So.2d 50 (La. 4/3/2002), reh'g denied. Marcantel did not seek direct review in the United States Supreme Court.

On June 7, 2002, Marcantel filed an application for post-conviction relief in the Thirteenth Judicial District Court, which was denied by the trial court on September 5, 2002 after an evidentiary hearing. On or about October 8, 2002, Marcantel applied for writs of review with the Third Circuit Court of Appeals. While his application was pending, Marcantel's conviction on appeal after remand was affirmed by the Third Circuit Court of Appeals. State v. Marcantel, 829 So. 2d 672 (La. App. 3rd Cir. 10/23/2002) (unpublished). On July 7, 2003, Marcantel's writ application was denied. State v. Marcantel, No. KH-02-01199.

On July 14, 2003, Marcantel submitted a writ application to the Louisiana Supreme Court. On August 20, 2004, the Supreme Court denied writs. State ex rel. Steve Marcantel v. State of Louisiana, 882 So.2d 567 (La. 8/20/2004).

### *Claims Presented*

On January 10, 2005, Marcantel filed the instant petition for writ of *habeas corpus* arguing eight claims for relief: (1) ineffective assistance of counsel due to a conflict of interest on the part of trial counsel; (2) prosecutorial misconduct stemming from the prosecutor's improper comments concerning Marcantel's right not to testify and ineffective assistance of trial counsel for failing to object to same; (3) prosecutorial misconduct stemming from the prosecutor's improper remarks concerning Marcantel's prior convictions and ineffective assistance of counsel for failing to object to same; (4) failure of the trial judge to instruct the jury that Marcantel's prior convictions were introduced for limited purpose and ineffective assistance of counsel for failure to request limiting instruction; (5) failure of the trial court to *sua sponte* instruct the jury about the limited purpose of evidence concerning Marcantel's prior convictions and ineffective assistance of counsel for failing to object to same; (6) failure of the trial court to instruct the jury that it should not draw any adverse inferences of guilt from defendant's failure to testify; (7) trial court's improper restriction of cross-examination of prosecution witness Stephen Marcal 'Mark' McCauley; and (8) insufficiency of the evidence to convict on all counts.[3]

---

[3] A ninth count, which was stated by Marcantel as a request that the court "discover such errors which were exhausted in State court, but somehow left out of his present Federal Habeas petition" was heretofore ruled to be insufficient to state a claim. See Memorandum Order dated April 21, 2005, Rec. Doc. 5. Rules 2(c)(1) and (2) of the Rules Governing Section 2254 Cases in the United States District Courts require that a habeas petitioner specify all grounds for relief in the habeas petition and state the facts supporting each ground. Because Claim Nine does not comply with Rules 2(c)(1) and (2), it was not included in the list of claims for the District Attorney to address in his response.

On April 21, 2005, the undersigned concluded that all claims had been completely exhausted and were ready for a merits review.[4]

### *Standard of Review*

This *habeas* petition was filed on January 10, 2005, and therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by The Antiterrorism and Effective Death Penalty Act (AEDPA). Title 28 U.S.C. § 2254(d) as amended, states:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deference scheme laid out in 28 U.S.C. § 2254(d), a federal habeas court must review pure questions of law and mixed questions of law and fact under § 2254(d)(1), and review questions of fact under §2254(d)(2), provided that the state court adjudicated the claim on the merits. See, e.g., DiLosa v. Cain 279 F.3d 259, 262 (5th Cir. 2002); Martin v. Cain, 246 F.3d 471, 475 (5th Cir. 2001); Trevino v. Johnson, 168 F.3d 173, 181 (5th Cir.), *cert. denied,* 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999). This court must therefore defer to the state court on questions of law and mixed questions of fact and law unless its decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is contrary to clearly

---

[4] Rec. Doc. 5.

established Federal law "if the state court (1) arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or (2) decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 364-65, 120 S.Ct. 1495, 1498 (2000). Under § 2254(d)(1)'s "unreasonable application" language, a writ may issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 365.

A presumption of correctness must be accorded to the state court's factual findings under 28 U.S.C. §2254(e)(1), and this court must defer to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 18 U.S.C. §2254(d)(2).

### *Law and Analysis*

### I.   Claim One: Conflict of Interest

Marcantel contends that he received ineffective assistance of counsel because his trial attorney, Chuck West, had a conflict of interest. Marcantel contends that during the relevant time period, West was employed as City Attorney for Pine Prairie, Louisiana; that the mayor of Pine Prairie could replace the City Attorney at any time; and that a key witness for the prosecution was the mayor's son, Stephen Marcal "Mark" McCauley. Marcantel contends that West did not vigorously cross-examine McCauley at trial because he was afraid of offending McCauley's father, the mayor, and losing his job as City Attorney.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) actual prejudice, that is, there is a reasonable probability that, but for counsel's deficient

performance, the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. The court's scrutiny shall be "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689-90. See also Marler v. Blackburn, 777 F.2d 1007, 1010 (5th Cir. 1985).

In some cases, prejudice is presumed if the defendant shows that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). In Cuyler, the Supreme Court set forth a lower threshold for reversal of a criminal conviction than does Strickland where actual conflicts exist; in such cases, prejudice is automatically presumed. Fifth Circuit caselaw interpreting Cuyler, however, distinguishes between conflicts that arise because of an attorney's *multiple representation of defendants in the same case* and those that arise because of an alleged breach in *the attorney's duty of loyalty to his client,* applying Cuyler's stricter standard of less than *per se* prejudice only in cases involving an attorney's multiple representation in the same case. See Beets v. Scott, 65 F.3d 1258, 1268-69 (5th Cir. 1995) (Cuyler, like all the other Supreme Court cases that have discussed a lawyer's conflict of interest, solely concerned the representation of multiple clients, and the Supreme Court has not expanded Cuyler's presumed prejudice standard beyond cases involving multiple representation). In all other cases, conflicts presented by an attorney's alleged breach of the duty of loyalty to a client are analyzed under the Strickland standard, which requires a defendant to prove deficient performance and actual prejudice.

Marcantel does not allege that Mr. West also represented a co-defendant, and therefore no "actual conflict" is presented. Marcantel does not even argue that Mr. West represented Mr. McCauley in another matter, or that he represented Mr. McCauley at one time. Rather, all that Marcantel alleges is that Mr. West *must have been* more concerned about his own interests than in zealously representing Marcantel, which *must have led* to a less than vigorous cross-examination of McCauley. Accordingly, the proper standard to apply in this case is the Strickland standard, requiring Marcantel to show that Mr. West's performance was deficient, and that he was actually prejudiced by the deficient performance.

The Third Circuit Court of Appeals did not directly address the merits of this claim, finding that there was no evidence in the record that the Mayor of Pine Prairie is the father of Mark McCauley. Similarly, in his instant petition, Marcantel presents no definitive evidence that McCauley is the son of the Pine Prairie Mayor. Notwithstanding the foregoing, the undersigned conducted a review of the trial transcript, and it is clear that the Mr. West's cross-examination of Mark McCauley was vigorous and probing. There is simply no evidence in the record suggesting that Mr. West was attempting to "go easy" on Mr. McCauley because of any purported relationship which the witness had to the mayor. Indeed, Mr. West attempted to impeach Mr. McCauley's credibility on numerous occasions, asking him about prior convictions for DWI, his current incarceration for failure to pay child support, and his participation in a drug treatment program for drug offenders. Consequently, there is no evidence that Mr. West's representation of Marcantel fell below an objective standard of reasonableness, nor is there any evidence that Marcantel was actually prejudiced by Mr. West's cross-examination of Mr. McCauley. Considering the foregoing, the undersigned concludes that this claim is without merit.

**II.** **Claims Two and Six: Prosecutor's Comments Regarding Marcantel's Right to Not Testify and Trial Court's Failure to Properly Instruct Jury**

### A. Applicable Law

In Claim Two, Marcantel contends that the prosecutor improperly commented on his right not to testify at trial, both during voir dire and closing arguments, and that his trial counsel was ineffective for failing to object to the prosecutor's comments. In Claim Six, Marcantel contends that the trial court failed to properly instruct the jury on the issue of his right not to testify and that his counsel was ineffective when he failed to move the court to properly instruct the jury. Because each of these claims involve Marcantel's right not to testify at trial, they are considered together.

Prosecutors are prohibited from commenting directly or indirectly on a defendant's failure to testify in a criminal case. United States v. Johnston, 127 F.3d 380, 396 (5th Cir. 1997), citing United States v. Montoya-Ortiz, 7 F.3d 1171, 1178 (5th Cir. 1993). A prosecutor's remarks constitute impermissible comment on a defendant's right not to testify if the prosecutor's manifest intent was to comment on the defendant's silence or if the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. Johnston, 127 F.3d at 396, citing United States v. Collins, 972 F.2d 1385, 1406 (5th Cir. 1992), cert. denied, 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993). A prosecutor's intent is not "manifest" if there is an equally plausible explanation of the prosecutor's remark. Collins, 972 F.2d at 1406. The challenged remarks must be considered in the context of the case in which they are made. Johnston, 127 F.3d at 396, citing United States v. Montoya-Ortiz, 7 F.3d 1171, 1179 (5th Cir. 1993).

### B. Claim Two

In the instant case, the prosecutor stated the following during voir dire:

Anthony L. Walker,
Assistant District Attorney: I want y'all to understand that he does not have to take the stand. He does not have to testify on his behalf. . . . .The fact that he doesn't take the stand you cannot hold it against Mr. Marcantel. Does anybody have any problem with that concept. Should he decide not to take the stand one way or the other. At the same time you need to understand that the State of Louisiana cannot force Mr. Marcantel to take the stand. We don't want ya'll to hold that against us, the State of Louisiana, by saying, "I want to hear what he says." We cannot do that. We cannot force him up there so ya'll won't hold that against the State of Louisiana. Okay?

(Trial Transcript, p. 231). During closing arguments, Mr. Walker stated:

The only evidence that you can consider as to what happened came from this witness stand. It came from the people who sat right there and testified. It came from the things that were introduced into evidence. That is the evidence that you have to consider.

(Trial Transcript, p. 398). Finally, during the State's rebuttal, Mr. Walker reminded the jury that they should focus on the "totality of the circumstances" with regard to the evidence that was presented at trial.

In Claim Two, Marcantel contends that the aforementioned statements constitute indirect references designed to focus the jury's attention on his failure to testify and "cast negative aspersions on the defendant if he did not testify on his own behalf."

The Third Circuit expressly rejected this argument, stating:

When an indirect reference is made, it constitutes reversible error only when the prosecutor intended to emphasize defendant's failure to testify. State v. Jackson, 454 So.2d 116 (La. 1984). References in closing argument to the fact that the State's case stands uncontroverted do not generally constitute grounds for a mistrial, as such statements refer to the case as a whole and do not focus on the defendant's failure to testify. State v. Davis, 445 So. 2d 164 (La. App. 3rd Cir.

> 1984).  *In the instant case, there was no intent to comment on the failure of Defendant to testify.  Considering the argument as a whole, the reference was intended to focus on the witness's testimony for the State and not on the Defendant's failure to testify.  The comments were not improper, and there was no violation of Defendant's legal right not to have his silence commented on.*

There is no factual dispute regarding the prosecutor's comments at trial regarding this matter.  Therefore, the issue presented involves a pure question of law, or at most, a mixed question of law and fact.  Either way, the standard to be applied is set forth in §2254(d)(1): this court must defer to the state court decision unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  See 28 U.S.C. § 2254(d)(1).

The Third Circuit correctly concluded that the statements of the prosecutor were not improper.  In fact, the prosecutor made no reference to the defendant at all – he simply brought the jury's attention to the fact that their decision had to be based upon the evidence presented.

Even if the prosecutor had made a direct reference to the defendant's evidence (or lack thereof), it would not necessarily be fatal under Fifth Circuit law.  In Montoya v. Collins, 955 F.2d 279, 287-88 (5th Cir. 1992), the Fifth Circuit held that the prosecutor's remark that the defendant failed to rebut evidence of his guilt was intended to be a "comment on the failure of the *defense,* as opposed to the *defendant,* to counter or explain the testimony presented or evidence introduced."  The court further noted that "[t]his kind of comment" is not an infringement of the defendant's fifth amendment privilege."  Montoya, 955 F.2d at 287-88, citing United States v. Becker, 569 F.2d 951, 965 (5th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978).

In the instant case, during voir dire, the prosecutor simply explained to the jury why the State would not call Marcantel as a witness. With respect to the comments made during closing arguments and rebuttal, the State merely focused the jurors' attention on the totality of the evidence that they had heard, not on Marcantel's failure to testify.

Furthermore, even if the undersigned were to conclude that the prosecutor's statements were improper, the error was harmless beyond a reasonable doubt. *See, e.g.,* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The prosecutor's comments in this case were made in the context of overwhelming evidence of Marcantel's guilt, for which Marcantel offered no evidence at all in rebuttal.

Considering the foregoing, the undersigned concludes that Marcantel has failed to show that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" under §2254(d)(1).

### C. Claim Six

Claim Six also relates to Mr. Marcantel's failure to testify. Marcantel argues that the trial court failed to properly instruct the jury on the issue of his right not to testify and that his counsel was ineffective when he failed to move the court to properly instruct the jury. Marcantel acknowledges that both he and the State requested that the trial court instruct the jury regarding the presumption that the person in the unexplained possession of property recently stolen is the thief. Accordingly, the trial judge instructed the jury that "there is a legal presumption that the person in the unexplained possession of property recently stolen is the thief, *but said presumption may none the less be destroyed by rebutting testimony.*" (Trial Transcript, p. 423) (emphasis added). Marcantel alleges that the trial court erred by failing to contemporaneously instruct the

jury that, in connection with this presumption, the jury should not draw any adverse inferences from Marcantel's failure to rebut the testimony with an explanation for *why* he was in possession of the stolen property. Marcantel also alleges that his counsel was ineffective when he failed to move the court to so instruct the jury.

These claims have clearly been exhausted in the state courts.[5] In his application for post-conviction relief in the trial court, Marcantel stated that defense counsel, jointly with the State, requested that the trial court instruct the jury concerning the presumption that the person in the unexplained possession of property recently stolen is the thief.[6] Marcantel claimed, however, that the court failed to instruct the jury and counsel failed to move the court to instruct the jury, that in context with the presumption, that the jury could not draw any adverse inferences of guilt from his failure to testify.[7] Following a two day hearing, the trial court denied Marcantel's application for post conviction relief, finding his claims to be without merit.[8] Marcantel presented identical claims to the Third Circuit Court of Appeal and the Louisiana Supreme Court.[9] The Third Circuit Court of Appeal denied Marcantel's application for writ of review,

---

[5]Marcantel raises this error in each of his state applications for post-conviction relief. See Marcantel's Uniform App. For Post Conviction Relief in the 13th Judicial District of Louisiana at Response to Petition for Writ of Habeas Corpus, Rec. Doc. 19 at 928, 953-956; Application for Writ of Review to the Third Circuit Court of Appeal. See Petition for Writ of Habeas Corpus, Rec. Doc. 1at Exhibit 8, p. vii; Application for Writ of Review to the Louisiana State Supreme Court at Response to Petition for Writ of Habeas Corpus, Rec. Doc. 19 at 1291. The State concedes that these claims have been fully exhausted and denied.

[6] Marcantel's Uniform App. For Post Conviction Relief in the 13th Judicial District of Louisiana at Response to Petition for Writ of Habeas Corpus, Rec. Doc. 19 at 928.

[7]Id.

[8]Rec. Doc. 19 at 1276-1277.

[9]Application for Writ of Review to the Third Circuit Court of Appeal, See Petition for Writ of Habeas Corpus, Rec. Doc. 1at Exhibit 8, p. 7; Application for Writ of Review to the Louisiana State Supreme Court at Response to Petition for Writ of Habeas Corpus, Rec. Doc. 19 at 1291.

holding that Marcantel failed to demonstrate prejudice or ineffective assistance of trial counsel.[10] The Louisiana Supreme Court denied Marcantel's application for supervisory and/or remedial writs, without reasons.[11]

There is no factual dispute regarding the content of the instruction or that defense counsel failed to object to the charge given by the court. Therefore, the issue presents a question of law, or at most, a mixed question of law and fact, and this court must defer to the state court decision unless it was contrary to or involved an unreasonable application of clearly established Federal law. See 28 U.S.C. § 2254(d)(1).[12]

Arguments similar to those raised by Marcantel have been rejected in the federal courts: The Fifth Circuit has held that "[i]f a jury could reasonably have understood that portion of the jury charge as creating a presumption that relieves the state of its burden of persuasion on an element of the offense, the potentially offending words must be considered in the context of the entire charge." Coleman v. Butler, 816 F.2d 1046, 1048-49 (5th Cir. 1987), citing Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In Coleman, the defendant challenged the following portion of the jury charge:

> A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may nonetheless be destroyed by rebutting evidence; such is the presumption that ... the defendant is innocent; that the person in the unexplained possession of property recently stolen is the thief....
>
> *From the recent possession of stolen things guilt may be inferred unless there is a reasonable account given of the property as having been lawfully and not*

---

[10]Rec. Doc. 19 at 1283.

[11]Rec. Doc. 19 at 1336.

[12]An ineffective assistance claim is a mixed question of law and fact. *See* Green vs. Johnson, 116 F.3d 1115 (5th Cir. 1997), *relying on* Salazar v. Johnson, 96 F.3d 789 (5th Cir. 1996).

*feloniously obtained.* This inference or presumption is strengthened or weakened in accordance with the length of time between the theft and the time of finding of the property.

Coleman, 816 F.2d 1048-49 (emphasis added). On appeal, the court considered the issue of whether the foregoing portion of the charge at issue could reasonably have been interpreted as a mandatory presumption, and held:

> We focus on the instruction that "[f]rom the recent possession of stolen things *guilt may be inferred* unless there is a reasonable account given of the property as having been lawfully and not feloniously obtained." *The word "may" dispels the notion that the instruction mandates the jury to infer either that the defendant participated in the taking or that the defendant possessed the requisite intent to deprive permanently.* The next sentence, in fact, invites the jury to weigh the strength to be accorded the inference by considering the length of time between the theft and the finding of the property. *This language not only denotes the permissive quality of the inference, but also confines the presumption to its proper scope, that of deciding whether the possessor participated in the taking.*

Id. (emphasis added).

In the instant case, the trial judge clearly indicated that the presumption in question was permissive only, noting that it "may none the less [sic] be destroyed by rebutting testimony." (Tr. 423). Thus, the trial judge properly instructed the jury that the presumption in question could be rebutted by evidence to the contrary. As the trial court properly instructed the jury, Marcantel's claim that his counsel was ineffective when he failed to object to the trial court's instruction is without merit.

Considering the foregoing, the undersigned concludes that the trial court properly instructed the jury regarding the presumption that the person in the unexplained possession of property recently stolen is the thief. The state courts' rulings denying Marcantel's claims that the trial court improperly instructed the jury, and that counsel was ineffective in violation of the Sixth Amendment when he failed to object to the court's instruction and request limiting

instructions, are not contrary to nor do they involve an unreasonable application of clearly

established Federal law and are entitled to deference. Thus, these claims are without merit.

### III. Claims Three, Four and Five: Prosecutor's References to Prior Conviction Evidence; and Trial Court's Failure to Instruct Jury that Prior Convictions were Admissible for Limited Purpose

In Claims Three, Four and Five, Marcantel contends that the prosecutor made highly

inflammatory remarks in closing arguments concerning his prior convictions for the purpose of

showing bad character, referring to him as a "big fish" and a "career criminal." He also contends

that the trial court failed to instruct the jury that his prior convictions were introduced for the

limited purpose of showing a requisite element of the crime charged. Finally, Marcantel alleges

that his trial counsel was ineffective for failing to object to the foregoing at trial.

Marcantel was charged with seven counts of possession of a firearm by a convicted felon.

Thus, evidence of a prior felony conviction was an essential element of the crime. At trial, the

prosecutor introduced evidence that Marcantel had been convicted of the crimes of simple battery

of a pharmacy and second degree battery in May 1997.

The State does not dispute that the prosecutor referred to Marcantel as a "big fish" and a

"career criminal." However, the more damaging factor was that the jury heard the eyewitness

testimony of three witnesses who testified that they saw the defendant in possession of the stolen

firearms. In light of the foregoing, the Third Circuit rejected these claims, finding that the jury

based its verdict on the evidence presented rather than the statements of the prosecutor that

Marcantel is a "big fish" and a "career criminal." Furthermore, courts have held that reference to

a defendant as a "career criminal" is not improper where evidence of a defendant's prior

convictions has already been admitted. See, e.g., Ambris v. Hickman, 116 Fed.Appx. 791, 792

(9th Cir. 2004), citing United States v. Young, 470 U.S. 1, 8, 105 S.Ct. 1038, 84 L.Ed.2d 1 n.5

(1985) (holding that "[t]he prosecutor may argue all reasonable inferences from evidence in the

record."). Considering that the Third Circuit's ruling is not contrary to federal law, this court

must give deference to that ruling.

The record also shows that the trial judge properly instructed the jury as to the limited

purpose for the introduction of evidence of Marcantel's prior convictions, to wit:

> Now, turn to the possession of a firearm by a convicted felon. The defendant is
> also charged with seven separate counts of allegedly possessing on or about May
> 11, 1997, firearms after having been convicted of the crimes of simple battery of a
> pharmacy and second degree battery as set forth in the bill of information which I
> will [now] read to you. . . .
>
> Thus, in order to convict the defendant of one or any or all of the offenses of
> possession of a firearm by a convicted felon you must find:
>
> 1. That the defendant was convicted of a burglary of a pharmacy and/or second
> degree battery.
> 2. That subsequent to those convictions, the defendant possession the firearm
> described in the bill of information, and
> 3. That a period of less than 10 years had elapsed since the defendant's
> completion of his sentence, parole, probation or conviction of burglary of a
> pharmacy and/or second degree battery as set for in the bill of information just
> read to you. . . .
> *Further, you are not to consider the evidence of one offense as evidence of the
> other offenses against the defendant. The defendant is not to be found guilty of
> one offense merely because he may have committed another.*

(Trial Transcript, p. 424-28) (emphasis added).

It is well-settled that evidence that is probative solely of bad character and not of any fact

related to the elements of the crime charged, such as intent or identity, is inadmissible at trial.

United States v. Beechum, 582 F.2d 898, 920 (5th Cir. 1978). However, a court has discretion to

admit evidence of more than one prior conviction when necessary to establish an element of the

offense charged. United States v. Quintero, 872 F.2d 107, 111 (5th Cir. 1989). Furthermore,

Louisiana state law permits the introduction of evidence of prior convictions where the evidence

is an element of the crime charged. See, e.g., State v. McArthur, 719 So.2d 1037, 1039 (La.

1998).

Considering the foregoing, the undersigned concludes that these claims are without merit.

## IV. Claim Seven: Trial Court Improperly Restricted Cross-Examination of State Witness Stephen "Mark" McCauley

Marcantel alleges that the trial court improperly limited his cross-examination of State

witness Stephen Mark McCauley concerning his prior arrests or other pending charges against

him, as well as deals or promises made to him by the State. Marcantel argues that an extensive

arrest record with few convictions tends to show that a witness will more likely give favorable

testimony for the State.

The Confrontation Clause of the Sixth Amendment guarantees the right of the accused in

a criminal proceeding to be confronted with the witnesses against him. Brown v. Dretke, 419

F.3d 365, 375-76 (5th Cir. 2005), citing Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct.

1431, 89 L.Ed.2d 674 (1986). Thus, a criminal defendant has a constitutional right to cross-

examine a prosecution witness and thereby expose any information relating to the reliability of

the witness. Brown, 419 F.3d at 375, citing Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct.

1105, 39 L.Ed.2d 347 (1974). However, courts have held that this right allows the defendant "an

*opportunity* for effective cross-examination, not cross-examination that is effective in whatever

way, and to whatever extent, the defense might wish." Pennsylvania v. Ritchie, 480 U.S. 39, 53,

107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct.

292, 88 L.Ed.2d 15 (1985) (emphasis in original)). It is well-settled that trial judges may impose

limits on cross-examination based on concerns about harassment, prejudice, confusions of the issue, the witness's safety, and interrogation that is repetitive or only marginally relevant. Brown, 419 F.3d at 375, citing Van Arsdall, 475 U.S. at 679, 106 S.Ct. 1431.

In the instant case, the record shows that the trial judge permitted defense counsel to question McCauley about prior convictions for driving while intoxicated, as well as the fact that he was incarcerated at the time of the trial for failure to pay child support. (Tr. 369). The judge also permitted defense counsel to question McCauley about his time in a rehabilitation clinic for treatment for drug use. (Trial Transcript, p. 370). However, the judge denied the defendant's request that he be permitted to question McCauley about prior arrests for criminal activity, finding that McCauley's arrest record was not relevant to the charges against Marcantel, nor was it probative of any bias that McCauley might have against Marcantel. This finding of the trial judge is consistent with Article 609.1[13] of the Louisiana Code of Evidence, which limits the impeachment of witnesses to convictions and not arrests or pending charges. For this reason, the Third Circuit rejected this argument. Because that ruling is not contrary to federal law, it is entitled to deference. Thus, this claim is without merit.

---

[13] Article 609.1(B) states:

> **B. Convictions.** Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.

La. Evid. Art. 609.1(B).

## V. Claim Eight – Insufficiency of the Evidence

Finally, Marcantel alleges that there was insufficient evidence to convict him on all counts. Specifically, Marcantel argues that it is "impossible" to be convicted of theft without being convicted of burglary.

Under section 2254, habeas relief "on a claim of insufficient evidence is appropriate only 'if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" Ramirez v. Dretke, 398 F.3d 691, 694-95 (5th Cir. 2005), quoting Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. United States v. Cyprian, 197 F.3d 736, 740 (5th Cir.1999). "A determination of a factual issue made by a State court shall be presumed correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In the instant case, in addition to the firearms possession charges, Marcantel was charged with one count of simple burglary and one count of theft over $500.00. To convict of simple burglary, the jury was instructed that it had to find both that Marcantel made an unauthorized entry into a building with the specific intent to commit a theft in that building. The jury was further instructed that, if it could not conclude that the State had proved the elements of this crime, it was possible to convict Maracentel of theft, which requires proof that the defendant took property belonging to the victim without his consent or by fraudulent means that was valued at more than $500.00. Apparently, the jury did not believe that the State proved all of the necessary elements of the crime of simple burglary, but did prove the required elements of the

crime of theft. The Louisiana Supreme Court, in ruling on the sufficiency of the evidence to

convict Marcantel of theft, succinctly summarized the evidence as follows:

> We now consider defendant's argument that the evidence of his guilt of theft was
> insufficient. The elements of the crime of theft are (1) that there be a
> misappropriation or taking, (2) that the misappropriation or taking be of a thing of
> value, (3) that the thing belong to another, and (4) that the misappropriation or
> taking be with the intent to deprive the other permanently of that which is the
> subject of the taking. LSA-R.S. 14:67.

> Defendant does not contest the fact that the testimony of the Prejeans established there
> had been a taking of property belonging to them of a value in excess of $500.00. The
> firearms introduced into evidence were direct evidence of the property that had been
> taken and not returned, evidencing an intent to permanently deprive the Prejeans of the
> guns. Thus, the elements of the crime of theft were established. However, defendant
> claims the evidence was insufficient to identify him as the person who actually stole the firearms.
> The jury's verdict of guilty of the firearm charges shows the jury accepted the testimony
> of Dupre, Deshotel, and McCauley that defendant possessed the Prejeans' firearms in
> their presence. The jury could have reasonably inferred from the defendant's possession of
> the firearms that he was the person who took them from the Prejean residence. This
> inference is reasonable because of the following proven facts: the defendant was Mr.
> Prejean's first cousin; the defendant was familiar with the Prejean residence; the
> defendant had access to information about their camping trip from his father with whom
> he resided; the defendant was seen with the guns in a pillow case, and a pillow case was
> taken from the Prejean residence at the time of the theft; the person who took the firearms
> left behind a handgun which had been given to Mr. Prejean by the defendant's father; one
> of the handguns taken in the burglary was kept loaded by the Prejeans; the same handgun
> was loaded the day Marcantel retrieved the stolen guns from the rural area and tossed the
> handgun at McCauley. Testimony established that as few as five days could have elapsed
> between the date of the theft and Marcantel's possession of the guns. Furthermore,
> despite the suggestions to the jury by defense counsel throughout the trial that the three
> State witnesses, not defendant, had burglarized the Prejean house, there was no evidence
> to establish that they knew the Prejeans or anything about their home or their possessions
> or their comings and goings. Thus, considering the evidence in a light most favorable to
> the prosecution, there was sufficient proof, without any legal presumption, from which
> any rational trier of fact could have found the essential elements of the crime of theft were
> proved beyond a reasonable doubt.

State v. Marcantel, 815 So.2d 50, 56-57 (La. 2002). The undersigned agrees with the Louisiana

Supreme Court that the evidence was sufficient to convict Marcantel of theft. The undersigned

also notes that every reviewing state court has upheld Marcantel's convictions, and that these

rulings are entitled to deference. Considering the foregoing, the undersigned concludes that this claim is without merit.

### *Conclusion*

For the foregoing reasons, the undersigned recommends that Marcantel's petition for writ of *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on January 27, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT
DATE 1-27-06
BY CW
TO MEM
RFD | MS